IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EFFECTIVELY ILLUMINATED PATHWAYS LLC, | § § § | |
| *Plaintiff*, | § § | NO. 6:11-cv-34-LED-JDL |
| v. | § § | JURY TRIAL DEMANDED |
| | § | |
| ASTON MARTIN LAGONDA OF NORTH AMERICA, INC.*, et al.*, | § § § | |
| *Defendants*. | § § | |

## MEMORANDOM OPINION AND ORDER

Before the Court is Defendants' Motion to Transfer Venue to the Eastern District of Michigan Pursuant to 28 U.S.C. § 1404(a) (Doc. No. 65) ("MOTION"). Plaintiff Effectively Illuminated Pathways LLC ("EIP") filed an opposition brief (Doc. No. 86) ("RESPONSE") and a sur-reply (Doc. No. 94) ("SUR-REPLY"). Defendants filed a reply. (Doc. No. 91) ("REPLY"). Because Defendants have failed to meet their burden in showing that the Eastern District of Michigan is a clearly more convenient forum, the Motion is **DENIED**.

## BACKGROUND

EIP filed suit on January 18, 2011 accusing seven automotive defendants of infringing U.S. Patent No. 6,520,669 ("the '669 patent"): Aston Martin Lagonda of North America, Inc. ("Aston Martin"); Volkswagen Group of America, Inc. ("Volkswagen"); Bentley Motors, Inc. ("Bentley"); Ford Motor Co. ("Ford"); Maserati North America, Inc. ("Maserati"); Mitsubishi

Motors North America, Inc. ("MMNA"); and BMW North America.[1]  *See generally* (Doc. No. 1).  The '669 patent, entitled "Flexible Substrate Mounted Solid-State Light Sources for Exterior Vehicle Lighting" generally relates to exterior automotive LED lighting.

EIP is a Texas company with its only place of business in Plano, Texas. DECLARATION OF RUBEN C. DELEON (Doc. No. 86-1) ("DELEON DECL.") at ¶ 3.  The Defendants are organized as follows:

- Aston Martin is a Connecticut corporation with a principal place of business in Irvine, California.  (Doc. No. 1) at ¶ 2; (Doc. No. 28) at ¶ 2.

- Bentley is a Delaware corporation with a principal place of business in Boston, Massachusetts.  (Doc. No. 1) at ¶ 3; (Doc. No. 130) at ¶ 3.

- Ford is a Delaware corporation with principal place of business in Dearborn, Michigan.  (Doc. No. 1) at ¶ 5; (Doc. No. 123) at ¶ 5.

- Maserati North America is a Delaware corporation with a principal place of business in Englewood Cliffs, New Jersey.  (Doc. No. 1) at ¶ 6; (Doc. No. 50) at ¶ 6.

- MMNA is a California corporation with a principal place of business in Cypress, California. (Doc. No. 1) at ¶ 7; (Doc. No. 26) at ¶ 7.

- Volkswagen is a New Jersey corporation with a principal place of business in Herndon, Virginia.  (Doc. No. 1) at ¶ 8; (Doc. No. 130) at ¶ 8.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

---

[1]BMW North America has since been dismissed from this action.  *See* (Doc. No. 103).

Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

**Threshold**

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. Well-established authority makes clear that a transferee court must have jurisdiction over the defendants in the transferred complaint. *In re Genentech,* 566

3

F.3d 1338, 1346 (Fed. Cir. 2009) (citing *Hoffman v. Blaski,* 363 U.S. 335, 343-44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960)); *Stragent LLC v. Audi AG*, No. 6:10-cv-227, 2011 WL 2912907, at *3 (E.D. Tex. July 18, 2011).

The Declarations filed by Defendants fail to provide evidence that each Defendant's accused products were available in Michigan or that each Defendant had continuous and systematic contacts with Michigan.  For example, Aston Martin provided a declaration stating only that Aston Martin Lagonda of North America, Inc. is responsible for sales and distribution of Aston Martin brand vehicles in the U.S. but does not maintain any design or manufacturing facilities in the United States.   (DECLARATION OF MICHAEL F. MARECKI (Doc. No. 65-4) ("MARECKI DECL.") at ¶ 2.[2]   Furthermore, Defendants provide no declaration even suggesting that the Eastern District of Michigan would have jurisdiction over Maserati.  Thus, Defendants have failed to provide sufficient evidence from which the Court could conclude that the Eastern District of Michigan would have jurisdiction over all Defendants.[3]   However, even if Defendants' evidence amounts to a *prima facie* showing of jurisdiction, Defendants have not met their burden of showing that the Eastern District of Michigan is a clearly more convenient forum.

**The "Clearly More Convenient" Standard**

---

[2] The Marecki declaration also states that it believes that an infringing product is supplied by a company with offices in Troy, Michigan.  MARECKI DECL. at 5.  While the Eastern District of Michigan may have jurisdiction over this third party, there is nothing in the declaration to support jurisdiction over Aston Martin Lagonda of the United States.

[3] The Court notes that the screenshots of Defendants' dealerships are of little probative value.  The screenshots merely show that each Defendant has a dealership located in Michigan but do not show that the accused instrumentalities, i.e. exterior automotive LED lights, are available in Michigan.  *See, eg.,* EX. 13 TO MOTION (Doc. No. 65-17) at 2 (showing one dealership, "Aston Martin of Troy," in Michigan).  Moreover, as EIP points out, the key inquiry is whether the Eastern District of Michigan had jurisdiction over all Defendants at the time the lawsuit was filed.  Because the screenshots are not dated or accompanied by an affidavit stating when the screenshots were taken, the Court cannot conclude that the dealerships were in the transferee district at time of filing.

In order to be successful in a 1404(a) motion, Defendants must show that the proposed transferee forum is "clearly more convenient."  Unlike many of its sister circuits,

> The Fifth Circuit does not consider the plaintiff's choice of venue independently but instead as part of the burden. Thus, the burden for a motion to transfer venue in a false marking case should be the same: the movant must show the transferee venue is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. But because the plaintiff's choice of venue is taken into account in the burden on the movant, the Court, in accordance with the Fifth Circuit, recognizes the significance of the burden and does not take it lightly. The Fifth Circuit announced:
>
> > Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer. Thus, our analysis directly manifests the importance that we must give to the plaintiff's choice.
>
> [*Volkswagen II*, 545 F.3d at 314 n. 10].  The court's analysis in *Volkswagen II* reflected the importance to the plaintiff's choice of venue, as the court issued a writ of mandamus to transfer venue in that case only after it found that four of the eight *Gilbert* factors weighed in favor of transfer and no factors weighed against transfer. Against this backdrop, the Court considers the merits of this motion to transfer venue.

*Texas Data Co., L.L.C. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 639-40 (E.D. Tex. 2011); *see also Lake Cherokee Hard Drive Technologies, LLC v. Bass Computers, Inc.*, No. 2:10-cv-216-JRG, 2012 WL 462956, at *5 (E.D. Tex. Feb. 13, 2012).

The Fifth Circuit's emphasis on the movant's heavy burden in a transfer analysis parallels the weight other circuits place on the plaintiff's choice of forum.  For example, the Seventh and Tenth Circuits have held that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should **rarely** be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (citations omitted) (emphasis added); *see also In re Affymetrix, Inc.,* Misc. No. 913, 2010 WL 1525010, at *1 (Fed. Cir. Apr. 13, 2010) (citing *Nat'l Presto,* 347 F.3d at 663-64) ("for transfer of venue to be appropriate, [defendant] must make a clear and indisputable showing that, on balance, the convenience and interest of justice considerations

strongly favor transfer"); *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) ("[u]nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed") (internal quotations omitted).

Similarly, the Third Circuit has held that "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal citations and quotation marks omitted); *but see In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) ("To be sure, the Third Circuit places significance on a plaintiff's choice of forum. When a plaintiff brings its charges in a venue that is not its home forum, however, that choice of forum is entitled to less deference."). Moreover, courts in other jurisdictions have found that the plaintiff's choice of forum is usually entitled to "great" or "substantial" weight. *See, e.g., D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006) (affording plaintiff's choice of forum "great weight"); *See Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007).

Thus, while the Fifth Circuit does not independently consider plaintiff's choice of forum as a "paramount consideration" or afford it "great" or "substantial" weight, "it is nonetheless taken into account as it places a significant burden on the movant to show good cause for transfer." *Volkswagen II,* 545 F.3d at 314 n.10; *see also In re TS Tech USA Corp.,* 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citing *Volkswagen II,* 545 F.3d at 314 n.10) (noting that "the plaintiff's choice of venue corresponds to the burden that a moving party must meet in order to demonstrate that the transferee venue is a clearly more convenient venue"). Accordingly, EIP's decision to file in this District "places a significant burden on [Defendants] to show good cause for transfer;" a burden that this Court does not take lightly. *Volkswagen II,* 545 F.3d at 314 n.10*;*

*Cherokee Hard Drive Technologies, LLC,* 2012 WL 462956, at *5; *Texas Data Co., LLC*, 771 F.

Supp. 2d at 638.

       **(a)**       **The Private Interest Factors**

           *(i) The Relative Ease of Access to Sources of Proof*

      For this factor to weigh in favor of transfer, the movant must demonstrate that transfer

will result in more convenient access to sources of proof.  The Federal Circuit requires the Court

to assume that the bulk of all relevant evidence will come from the accused infringer.

*Genentech*, 566 F.3d at 1345.  As a result, "the place where the defendant's documents are kept

weighs in favor of transfer to that location.'" *Id.* (quoting *Neil Bros. Ltd. v.  World Wide Lines,*

*Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)).

      In order to meet their burden, defendants must identity their sources of proof with some

specificity such that the Court may determine whether transfer will increase the convenience of

the parties.  *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.,* No. 6:08–cv–211, 2009 WL

440525 at *2 (E.D. Tex. Feb. 20, 2009); *West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-

688, 2011 WL 5117850, at *2 (E.D. Tex. Oct. 27, 2011); *see also Invitrogen v. Gen. Elec. Co.,*

*No.* 6:08–CV–113, 2009 WL 331889 at *3, (E.D. Tex. Feb.9, 2009) (finding that general

statements that relevant documents were located in either England or New Jersey "fail to show

that transfer would make access to sources of proof either more or less convenient for the

parties.").  This is particularly true where, as here, there are multiple defendants with different

places of incorporation, principal places of business, and third-party suppliers.

      Aston Martin makes no attempt to identify its sources of proof but identifies a third-party

manufacturer that provides the tail light assembly found on the Aston Martin Vantage ("Vantage

Tail Light").  MARECKI DECL. at ¶ 5.  Aston Martin states that documents related to the Vantage

Tail Light are likely located with the third-party manufacturer, Autosystems, a division of Magna Interior and Exterior Systems, Corp. ("Magna"). *Id.* Although Magna has U.S. corporate offices in Troy, Michigan, Aston Martin asserts that all relevant documents related to design and manufacture of the Vantage Tail Light will be located in Belleville, Ontario. *Id.* Aston Martin does not disclose where it keeps the documents regarding its relationship with Magna or its documents related to the sales, marketing, and distribution of its automobiles in the U.S. Absent suggestion to the contrary, the Court will assume these documents are located at Aston Martin's U.S. headquarters in California. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (noting that defendant's "primary offices . . . likely house potential sources of proof").

Volkswagen's Auburn Hills, Michigan facilities house technical documents and equipment relating to the exterior LED lights used in Volkswagen vehicles. (DECLARATION OF ROBERT A. ARTURI (Doc. No. 62-2) ("ARTURI DECL.") at ¶ 3. However, Volkswagen's corporate headquarters and finance departments are located in Herndon, Virginia. *Id.* at ¶ 6.

Ford's documents related to the accused instrumentalities are housed in its Dearborn, Michigan facilities. DECLARATION OF JENNIFER M. STEC (Doc. No. 65-1) ("STEC DECL.") at ¶ 6. Moreover, Ford's vehicle marketing group is headquartered in Dearborn, Michigan, and Ford has manufacturing plants in Michigan. *Id.* at ¶¶ 4-5. Ford also identifies a third-party manufacturer, Automotive Lighting, which has its U.S. corporate headquarters, development, technical, and sales facilities in Auburn Hills, Michigan. *Id.* at ¶ 7.

Although, MMNA is headquartered in California, MMNA asserts that its research and development facilities are located in Ann Arbor, Michigan. DECLARATION OF JERRY BERWANGER (Doc. No. 65-3) ("BERWANGER DECL.") at ¶ 4; (Doc. No. 1) at ¶ 7; (Doc. No. 26) at ¶ 7. Moreover, MMNA has a manufacturing facility in Normal, Illinois. Thus, MMNA asserts

8

that "[a]ll documentary evidence located in North America concerning the accused lamp assemblies, selection, use or purchase of the accused lamp assemblies and the vehicles in which the accused lamp assemblies are utilized is located at [Mitsubishi Motors Research and Development of America] in Ann Arbor or at the manufacturing facility in Normal, Illinois." BERWANGER DECL. at ¶ 7.  Furthermore, MMNA asserts that the accused lamp assemblies were purchased from Valeo Sylvania, which is headquartered in Seymour, Indiana.  *Id.* at ¶ 8.  The research and development operations and manufacturing facility for Valeo Sylvania are located in Seymour, Indiana; however, Valeo Sylvania has a sales office in Dearborn, Michigan.  *Id.*

Maserati's U.S. corporate headquarters is in New Jersey, but Defendants do not provide an affidavit or argument regarding Maserati's documents. *See* (Doc. No. 1) at ¶ 6; (Doc. No. 50) at ¶ 6.  Thus, absent suggestion to the contrary, the Court will assume Maserati's documents are located at its corporate headquarters in New Jersey.   Lastly, Bentley's U.S. corporate headquarters is located in Boston, Massachusetts but all technical operations and manufacturing facilities are located in the United Kingdom. ARTURI DECL. at ¶ at 8.

The Court recognizes the difficulties in properly evaluating this factor at an early stage in the litigation because the Court must rely almost exclusively on self-reporting from the parties. Defendants themselves are in the best position to know where their documents are held but have incentive to highlight sources of proof in or near the transferee forum at the risk of neglecting other potential sources of proof.  *See Texas Data Co., LLC,* 771 F. Supp. 2d at 644 n.15.  In this case, although all defendants have moved for transfer, not all defendants have provided evidence or argument as to where their documents are likely located. Not surprisingly, the most detail comes from those defendants with documents in the Eastern District of Michigan.  In contrast, there is little to no information regarding the sources of proof for Aston Martin or Maserati.  To

9

the extent it can be identified, however, Defendants' relevant evidence is scattered across North America and Europe.

Defendants argue that EIP's documents should not be afforded any weight in the transfer analysis because its presence in Texas is "recent, ephemeral, and for the purpose of litigations." REPLY at 2 (citing *In re Zimmer Holdings, Inc.,* 609 F.3d 1378, 1381 (Fed. Cir. 2010); MOTION at 1-2; 14-15.   The Federal Circuit has found that a plaintiff's presence in the transferee forum should be afforded no weight if created intentionally to manipulate venue.  *Zimmer Holdings,* 609 F.3d at 1381.  In order to evaluate whether an entity is an "ephemeral" entity, courts in this District often look to whether the entity has "(1) employees in the transferor forum; (2) principals that reside in the transferor forum; or (3) research and development-type activities in the transferor forum."  *Novelpoint Learning LLC v. Leapfrog Enterprises, Inc.*, No. 6:10cv229, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010) (citing *Zimmer Holdings*, 609 F.3d at 1381). The burden is on Defendants to show that EIP was incorporated in the Eastern District of Texas merely to manipulate venue.  *See Lake Cherokee Hard Drive Tech.,* 2012 WL 462956, at *4.

The Court finds that Defendants have not met their burden of showing that EIP was incorporated in Texas merely to manipulate venue.  Although the record is devoid of any indication that EIP has any employees or conducts research and development-type activities in this or any other district, EIP's founder and sole member, Ruben DeLeon, is a lifelong Texas resident.  DELEON DECL. at ¶ 1.  Specifically, DeLeon has lived in Grapevine, TX, just outside the Eastern District, for the past twelve years.  *Id.*  DeLeon's law practice, which shares an address with EIP, has been located in Plano, TX for approximately three years.  *Id.* at 2.  *See Stragent*, 2011 WL 2912907, at * 6 (noting that the presence of five of plaintiff's principals in this District weighs against discounting plaintiff's presence in the District); *Lake Cherokee Hard*

*Drive Tech., LLC,* 2012 WL 462956, at *4 (dismissing venue manipulation allegations where plaintiff's president maintained a residence in this District).  Moreover, the fact that EIP was incorporated in Texas six months before initiating the instant action is insufficient in and of itself to show venue manipulation.  *See Novelpoint Learning LLC*, 2010 WL 5068146, at * 5 (no venue manipulation where plaintiff incorporated four months before suit); *Lake Cherokee Hard Drive Tech.*, at 2012 WL 462956 *4 (same).

EIP's presence in this District is easily distinguished from *Zimmer Holdings* and *In re Microsoft.*  In *Zimmer Holdings,* plaintiff was a Michigan corporation with a registered office in Michigan, and its only two corporate officers resided in Michigan.  *Zimmer Holdings,* 609 F.3d at 1381.  Plaintiff's only connection to Texas was "uncorroborated contentions that Plaintiff has its principal place of business in Texas" and it shared some Texas office space with another of its trial counsel's clients.  *Id.*  In *In re Microsoft*, the Federal Circuit found evidence of venue manipulation where plaintiff was operated entirely from the United Kingdom despite incorporating in the Eastern District of Texas sixteen days before filing the lawsuit.  *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011).  Plaintiff had no employees in its Texas offices but directed requests and inquiries to its Texas office which were then forwarded to plaintiff in the United Kingdom.  *Id.*  Thus, the court found that the "Texas" office "exist[s] for no other purpose than to manipulate venue." *Id.* at 1365.  In contrast, EIP is a Texas corporation with a registered office in Texas and its only corporate officer resides in Grapevine, Texas, just outside of the Eastern District of Texas.  Thus, this appears to be a situation where a Texas resident who lives and works in or near the Eastern District of Texas chose to locate his business where he worked, in Plano, Texas.  While evidence may show that EIP was formed by an attorney to enforce his rights as a patent holder, nothing in the record indicates that the choice to

locate in this District was to manipulate the venue analysis.  *See Texas Data Co., LLC*, 771 F. Supp. 2d at 638 (Plaintiff[]'s identity as a holding company formed by its lawyers does not change the deference to the plaintiff's choice of venue . . . . []These entities own a legitimate property right—the  patent—that  they are seeking to enforce.  The Court is not aware of any rules that apply differently to them.")

Furthermore, Defendants suggest that the presence of EIP's documents in this District is a mere "artifact of litigation" and therefore should be afforded no weight in the transfer analysis. *See* REPLY 2 (citing *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009).  In *Hoffman-La Roche*, the court found evidence of venue manipulation where  plaintiff's "counsel in California converted into electronic format 75,000 pages of documents demonstrating conception and reduction to practice to the offices of its litigation counsel in Texas."  *Hoffman-La Roche,* 587 F.3d at 1336-37.  While Defendants are correct that many of EIP's documents were recently transported to the District, there is no evidence on the record to support Defendants' contention that they were transported to manipulate venue.  In contrast, EIP presents a declaration from DeLeon, the sole member of EIP, explaining that EIP received documents relating to the invention and prosecution of the '669 patent as part of a patent purchase agreement with the original owner, Dr. James Chen.  DELEON DECL. at ¶ 5.  Thus, EIP's documents are entitled to full consideration in the transfer analysis.  *See Advanced Display Technologies of Texas, LLC v. AU Optronics Corp.*, No. 6:11-cv-11, slip op. at 4 n.1 (E.D. Tex. Mar. 27, 2012).

Due to Volkswagen, Ford, and MMNA's connections to Michigan, it would be more convenient for these parties to litigate in the Eastern District of Michigan.  However, based on the record presented, the Court cannot conclude that it would be more convenient for the

remaining parties to transport their evidence to the transferee forum.   Thus, because the relevant evidence is located in multiple states, including the transferor forum, transferring the action to the Eastern District of Michigan will not be substantially more convenient for all parties.  *See In re Google, Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011) (quoting *Nat'l Presto Indus., Inc.*, 347 F.3d 622, 665 (7th Cir. 2003) ("Where [defendants] are in different states there is no choice of forum that will avoid imposing inconvenience[.]")

*(ii) Availability of Compulsory Process to Secure the Attendance of Witnesses*

This factor weighs heavily for transfer if the majority of non-party witnesses are located within the Eastern District of Michigan.  *See Volkswagen II*, 545 F.3d at 316; *see also Zimmer Holdings*, 609 F.3d at 1381 (stating that the venue where potentially relevant witnesses are located weighs in favor of that venue).  Defendant bears the burden to demonstrate and identify unwilling third-party witnesses that would benefit from the transfer.  *Texas Data Co., LLC,* 771 F.Supp.2d at 643-44 n. 14, n. 15 (E.D. Tex. 2011); *Novelpoint Learning LLC ,* 2010 WL 5068146, at *6 (E.D. Tex Dec. 6, 2010) (noting that the Court will not base its conclusion on unidentified witnesses); s*ee also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011) (same).

In this case, Defendants do not identify specific individuals who might have information regarding the accused exterior LED lighting assemblies.  In contrast, Defendants point to third-party manufacturers Automotive Lighting, Valeo Sylvania, and Magna who would be subject to compulsory process in the Eastern District of Michigan.  MOTION at 10.  Although Defendants are correct that the associated subpoenas would likely be directed to the companies, merely identifying the location of a manufacturing facility or corporate headquarters does little to persuade the Court that these third-party suppliers will be unwilling witnesses requiring

13

subpoena.  Further, EIP identifies the third-party inventor, Dr. Cheng, who currently resides in Washington.

Defendants' identification of third party manufacturers with offices in the transferee forum weighs in favor of transfer.  However, the weight afforded to these potential witnesses is mitigated by Defendants' failure to identify particular witnesses or documents that would require the use of compulsory process.  Further, Dr. Chen's presence in Washington means that Michigan will not have compulsory process over all nonparty witnesses.  Accordingly, the Court finds this factor weighs in favor of transfer, but not overwhelmingly so.

*(iii) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered.  *Volkswagen I*, 371 F.3d at 204.  "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *TS Tech USA Corp.*, 551 F.3d at 1320 (citations omitted).

The only identified non-party witness, the inventor of the patent in suit Dr. Chen, has agreed to appear for trial in Texas.  DECLARATION OF JAMES. C. CHEN (Doc. No. 86-3) at ¶¶ 5-6. Although Dr. Chen states that traveling to Tyler would be convenient for him, his location in Washington State is approximately equidistant from Tyler and Detroit.  Defendants' failure to identify specific witnesses who will testify mitigates the weight afforded to the presence of manufacturers in Michigan.  For example, Defendants' own affidavits show that Valeo Sylvania's headquarters and design and manufacturing facilities are located in Seymour, Indiana.

14

BERWANGER DECL. at ¶ 8.  Similarly, Aston Martin indicates that "it is believed that Magna employees who are most familiar with the design and manufacture of the Vantage Tail Light . . . are all located in Ontario, Canada."  MARECKI DECL. at ¶ 5. Nevertheless, the third party witnesses likely reside closer to the transferee forum.

Travel to Detroit from Auburn Hills, Michigan will be more convenient for the Volkswagen witnesses with knowledge of the design and operation of Volkswagen's accused products.  These witnesses include Eric Eichhorst and Steven Yip.  ARTURI DECL.  at ¶ 4. Similarly, travel from Dearborn, Michigan to Detroit will be more convenient for Ford's witnesses who are able to testify about the operation of the accused exterior LED systems. These witnesses include Albert Ekladyous and Chad Clement.  STEC DECL. at ¶ 5.  Further, MMNA's unidentified witnesses located in Ann Arbor, Michigan or Normal, Illinois will be less inconvenienced traveling to Detroit, Michigan.  *See* BERWANGER DECL. at ¶ 8.

Defendants' remaining witnesses are scattered.  Aston Martin has not identified any witnesses with knowledge of the accused system; however, the location of its principal place of business in Irvine, California creates a presumption that witnesses with knowledge of the design, implementation, and sales of the accused devices are likely located there.  *See* (Doc. No. 1) at ¶ 2; (Doc. No. 28) at ¶ 2.  Similarly, witnesses with knowledge of Maserati's design, implementation, and sales of the accused devices are likely located in Englewood Cliffs, New Jersey. (Doc. No. 1) at ¶ 6; (Doc. No. 50) at ¶ 6.  Further, witnesses with knowledge of Bentley's accused products are located in Boston, Massachusetts or in the United Kingdom.  *See* (Doc. No 1) at ¶ 3; (Doc. No. 130) at ¶ 3; ARTURI DECL. at ¶ 9.  Witnesses with knowledge of the marketing, sales, and finance of Volkswagen's products are likely located in Herndon, Virginia. ARTURI DECL.  at ¶ 6.

Lastly, EIP has identified Ruben DeLeon, the founder and sole member of EIP, who works in Plano, Texas.  *See* DELEON DECL. at ¶¶ 1, 3.  The diffuse nature of this action imposes inconvenience on the parties, regardless of the forum.  Even though the convenience of some non-identified third party witnesses and four party witnesses weighs in favor of transfer, the widespread geographic nature of the case dampens the weight given to these witnesses' convenience.   Thus, while Volkswagen, Ford, and MMNA's witnesses may be less inconvenienced by travel to Detroit, there is insufficient information on the record from which the Court can conclude that the remaining Defendants' witnesses would be greatly inconvenienced by traveling to Tyler.  Accordingly, this factor only slightly favors transfer.

### (iv)  Other Practical Problems

Neither party has identified any practical problems that would make trial in the transferee forum less efficient than in the District.

### (b)   The Public Interest Factors

### (i)   The Administrative Difficulties Flowing From Court Congestion

This factor is the most speculative, and cannot alone outweigh other factors.  *Genentech*, 566 F.3d at 1347.  However, the speed with which a case may get to trial is relevant under the § 1404(a) analysis.  *Id.*  Defendants cite to federal court statistics showing that "the Eastern District of Michigan disposes of civil cases faster than this District (8.3 months versus 9.5 months)."  MOTION at 15.  However, a 1.2 month difference in the time to disposition across all civil cases is not probative of the time to disposition of ***patent*** cases.  *See West Coast Trends, Inc.,* 2011 WL 5117850, at *4.  To the extent the statistics cited by Defendants are relevant, a difference of only 1.2 months is negligible.  Accordingly, the Court finds this factor neutral.

### (ii)  The Local Interest in Having Localized Interests Decided at Home

16

The Court considers local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Further, the sale of accused products nationwide does not implicate the interests of one district any more than the interests of any other district. *Volkswagen II*, 545 F.3d at 318. The Court recognizes that the Eastern District of Michigan has local interest in this action that is not insignificant. This is not surprising given the nature of the suit, i.e., a patent infringement action against major automobile manufacturers. Ford, MMNA, and Volkswagen operate facilities in the Eastern District of Michigan that employ significant percentage of the working population in Detroit. Similarly, a third-party manufacturer that supplies Ford, Automotive Lighting, has its headquarters and design facilities in the Eastern District of Michigan.[4]

On the other hand, the Eastern District of Texas has a local interest in the outcome of the case due to EIP's connections which were previously determined to be entitled to some weight. The facts here are distinguishable from the facts presented in the *Volkswagen* cases. For example, the court in *Volkswagen I* found that this factor weighed heavily in favor of transfer where the plaintiff, the third-party defendants, and witnesses to the automobile crash resided or worked in the transferee forum. *Volkswagen I*, 371 F.3d at 206. Contrary to *Volkswagen I* where the court found "there is absolutely nothing in this record to indicate that the people of  . . . the Eastern District of Texas[] have any meaningful connection or relationship with the circumstances of these claims," EIP is located within the Eastern District of Texas and one of Plaintiff's principal witnesses, DeLeon, works in the District. *Id.*

---

[4] However, the design and manufacture of products supplied by Magna and Valeo Sylvania occurred in Ontario, Canada and Seymour, Indiana respectively.

17

Similarly, in *Volkswagen II*, the court found that the local interest factor weighed heavily in favor of transfer where there was "no relevant factual connection to the [transferor forum]." *Volkswagen II*, 545 F.3d 304 at 318.  Specifically, the court noted:

> [T]he accident occurred in the Dallas Division, the witnesses to the accident live and are employed in the Dallas Division, Dallas police and paramedics responded and took action, the Volkswagen Golf was purchased in Dallas County, the wreckage and all other evidence are located in Dallas County, two of the three plaintiffs live in the Dallas Division (the third lives in Kansas), not one of the plaintiffs has ever lived in the Marshall Division, and the third-party defendant lives in the Dallas Division. In short, there is no relevant factual connection to the Marshall Division.

*Id.* at 317-18.  Again, the facts and circumstances of this case are distinguishable.  EIP, its evidence, and its sole member are all located in the Eastern District of Texas.   Thus, this is not a situation where a foreign corporation sues foreign defendants arguing only that the accused products are available in the District.  *Cf.  TS Tech USA Corp.*, 551 F.3d at 1321; *In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1198 (Fed. Cir. 2009) (finding the local interest factor favored transfer to the Western District of Washington where "[t]he record shows that [plaintiff] is incorporated in Washington and has its principal place of business in the Western District of Washington  . . . [and] [n]o parties, witnesses, or evidence have any material connection to the venue chosen by the plaintiff").  While the Eastern District of Michigan has a local interest in the case, the Eastern District of Texas as a local interest in protecting both the intellectual property rights of companies that choose to locate in this District and the rights of individuals who live and work in this District.  Accordingly, this factor weighs against transfer.

### (iii)    The Remaining Public Interest Factors

The remaining public interest factors are neutral.  Both courts are familiar with federal patent law and there are no conflicts to avoid.

### CONCLUSION

18

As noted above, the Fifth Circuit does not consider Defendants' burden lightly and therefore requires defendants to show that the transferee forum is clearly more convenient. Based on the evidence presented, the Court cannot conclude that the Eastern District of Michigan is a clearly more convenient forum for the entirety of this action.  The relevant evidence and witnesses are located in multiple states including this District; thus there is no choice of forum that will avoid imposing inconvenience.  While those parties who are located within the Eastern District of Michigan will be more inconvenienced by litigating their case in this District, the Defendants have not shown that transfer of the entire action is clearly warranted.  At best, the balance of the factors weighs slightly in favor of transfer; however, this does not approach the level of "clearly more convenient" required by the Fifth Circuit.  Accordingly, Defendants' Motion to Transfer to the Eastern District of Michigan is **DENIED**.


**So ORDERED and SIGNED this 19th day of April, 2012.**


_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE